**SO ORDERED.**

**SIGNED this 01 day of September, 2009.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DOUGLAS L. WENZEL, | ) | Case No. 08-13232 |
| THERESA L. WENZEL, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OPINION**

The chapter 13 trustee objects to confirmation of debtors' chapter 13 plan and contends that debtors are not providing all of their projected disposable income to pay unsecured creditors as required by 11 U.S.C. § 1325(b)(1)(B).[1] More specifically, the trustee objects to debtors' claimed

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), title 11, U.S.C. § 101 *et seq.*

-1-

$489 deduction for vehicle ownership expense on Official Form 22C, line 28.[2] The debtors' 2001 Pontiac Firebird is unencumbered and paid for. This claimed deduction impacts the calculation of debtors' projected disposable income.

This case was submitted to the Court on joint stipulations of fact and briefs of the parties. The chapter 13 trustee Laurie B. Williams appears by Christopher Micale. The debtors appear by their attorney Jack Peggs.

Jurisdiction

This objection to confirmation is a core proceeding under 28 U.S.C. § 157(b)(2)(L) and the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1).

Factual Background

Debtors filed their chapter 13 petition on December 15, 2008. At the time of filing, they owned four vehicles: a 1973 Pontiac Trans Am, a 1994 Pontiac Firebird, a 2001 Pontiac Firebird ("Firebird"), and a 2005 Dodge Neon ("Neon"). Only the Neon, purchased in January of 2008, is encumbered by a lien.

On Form 22C filed concurrently with their petition, debtors reported $6,684.72 of current monthly income (CMI) and the amount of $80,216.64 as annualized CMI. Debtors are above-median income debtors for the purposes of § 1325(b). On line 28 of Form 22C, debtors claim the $489 IRS standard for ownership costs for the Firebird but list no average monthly payment for any debt secured by the vehicle. Debtors therefore deducted from CMI the entire allowance of $489 for vehicle ownership expense of the Firebird. On line 29 of Form 22C, debtors claim the $489 IRS

---

[2] Official Form 22C is the debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income.

-2-

standard for vehicle ownership costs, less the average monthly payment of $191.54 for the lien securing the debt on the Neon, for a net vehicle ownership expense deduction of $297.46.[3] Debtors deducted the Neon's average monthly payment on line 47 as they are permitted to do for secured debt payments.

Debtors' monthly disposable income shown on line 59 of Form 22C is $314.93, inclusive of the vehicle ownership expense deduction for the Firebird. The Firebird is more than six years old and has over 75,000 miles. Debtors are therefore permitted to deduct an additional $200 operating expense on line 27.[4] If the vehicle ownership deduction is disallowed for the Firebird but a $200 operating deduction is allowed due to its age/mileage, these adjustments yield a monthly disposable income figure of $603.93.[5] As adjusted, the debtors' plan must provide $36,235.80 to unsecured creditors to comply with § 1325(b).[6] Debtors' plan proposes to pay approximately $20,223 to unsecured creditors. Thus, debtors' compliance with § 1325(b)(1)(B) turns on whether they are permitted to deduct a vehicle ownership expense for the Firebird, a vehicle they own free and clear of any liens.

Analysis

---

[3] Debtors are allowed a vehicle ownership expense deduction for no more than two vehicles. *See* Form 22C, line 28; http://www.irs.gov/individuals/article/0,,id=96543,00.html.

[4] An additional operating expenses of $200 is allowed for a vehicle which is over 6 years old and/or has reported mileage of 75,000 miles or more. See Internal Revenue Manual, Financial Analysis Handbook, § 5.8.5.5.2(3) found at http:// www. irs. gov/ irm/ part 5/ ch 08 s 05. html.

[5] The vehicle deductions are overstated by $289 [$489 disallowed ownership deduction minus $200 allowed operating deduction]. Thus, debtors' monthly disposable income figure of $314.93 would be increased by $289 to yield a monthly disposable income figure of $603.93.

[6] $603.93 x 60 months = $36,235.80.

-3-

This is not the first occasion the Court has had to consider the propriety of the vehicle ownership deduction claimed by debtors here. The trustee relies on this Court's previous decision *In re Howell*,[7] wherein the Court disallowed a vehicle ownership deduction for a vehicle that was unencumbered. Debtors urge this Court to depart from *Howell* and follow the Tenth Circuit Bankruptcy Appellate Panel's decision *In re Pearson (Pearson I)*,[8] even though the BAP opinion was subsequently vacated by the Tenth Circuit Court of Appeals.[9]

Because more than two years has passed since this Court decided *Howell*, the Court has undertaken a review of the case law that has developed on this issue in the interim.[10] As in 2007 when this Court issued *Howell*, the courts at all levels remain split on the deductibility of a vehicle ownership expenses for a vehicle that is unencumbered and for which no loan payments are being made. In this district, subsequent to *Howell*, Judge Lungstrum held that debtors were not entitled to take vehicle ownership expense deductions for vehicles owned outright.[11] Judge Karlin has also

---

[7] 366 B.R. 153 (Bankr. D. Kan. 2007).

[8] 390 B.R. 706 (10th Cir. BAP 2008).

[9] *See In re Pearson*, 2009 WL 205408, 309 Fed. Appx. 216 (10th Cir. Jan. 22, 2009), *dismissing appeal as moot, vacating opinion* 390 B.R. 706 (10th Cir. BAP 2008), *and remanding with instructions, and on remand,* 399 B.R. 829 (10th Cir. BAP 2009) (*Pearson II*) (vacating bankruptcy court decision).

[10] As noted in *Howell*, the bankruptcy courts were fairly evenly divided on this issue in 2007. 366 B.R. at 156-57, n. 18-19.

[11] *Wieland v. Thomas*, 382 B.R. 793 (D. Kan. 2008) (predicting the Tenth Circuit's interpretation of the statute in the context of a chapter 7 case and application of means test for determining abuse), *reversing In re Thomas,* 2007 WL 2903201 (Bankr. D. Kan. 2007) (Berger, J.).

-4-

sided with this Court's result in *Howell*.[12] This Court's review of bankruptcy court decisions across the country suggest that the courts remain split on this issue.[13]

The cases coming out of the circuit Bankruptcy Appellate Panels (BAPs) are also evenly split on the vehicle ownership deduction in these circumstances. The Eighth and Ninth Circuit BAPs, disallow the deduction where the debtor owns the vehicle free and clear of liens and has no loan payments.[14] The Sixth and Tenth Circuit BAPs have allowed the vehicle ownership expense deduction under these circumstances.[15] More will be said later regarding the Tenth Circuit BAP's decision in *Pearson I*.[16]

At the circuit court level, four courts of appeals have addressed the vehicle ownership expense issue. The Fifth Circuit and Seventh Circuit have allowed the deduction, in both instances

---

[12] *See In re Law*, 2008 WL 1867971, *11 (Bankr. D. Kan. Apr. 24, 2008) (Karlin, J.) (disallowing vehicle ownership deduction for unencumbered vehicle in chapter 13 context and concluding that this approach "seems to best fit both the [ambiguous] statutory language [of § 707(b)(2)(A)(ii)(I)] and expressed Congressional intent behind BAPCPA.")

[13] *See* James P. Terpening, III, *All or Nothing: Properly Deducting Vehicle Ownership Expenses Under § 707(b)(2)(A)(ii)(I)*, 25 EMORY BANKR. DEV. J. 565, 567-68 (2009) (noting that as of January 2009, 80 bankruptcy courts have addressed the issue).

[14] *See Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 380 B.R. 799 (9th Cir. BAP 2007), *aff'd* ___ F. 3d ___, 2009 WL 2477609 (9th Cir. Aug. 14, 2009) (interpreting §707(b)(2)(A)(ii)(I) as precluding a vehicle ownership expense deduction when debtor has no such expense); *Babin v. Wilson (In re Wilson)*, 383 B.R. 729 (8th Cir. BAP 2008) (debtors who owned vehicles outright and did not have any vehicle ownership expenses, had no "applicable" monthly expense amount under IRS standards and were not entitled to deduction).

[15] *See Pearson v. Stewart (In re Pearson)*, 390 B.R. 706 (10th Cir. BAP 2008) (*Pearson I*) (reversing bankruptcy court and permitting vehicle ownership expense deduction for vehicle owned outright under a purported "plain language view"); *Hildebrand v. Kimbro (In re Kimbro)*, 389 B.R. 518 (6th Cir. BAP 2008) (contrasting term "applicable" as used in means test provision with "actual" and concluding that debtors were not required to genuinely have such an expense).

[16] 390 B.R. 706 (10th Cir. BAP 2008).

-5-

in the context of a chapter 7 case and determining whether an abuse exists to warrant dismissal or conversion under § 707(b)(1) and (2).[17] Most recently, however, the Eighth and Ninth Circuits have addressed the deductibility of the vehicle ownership expenses in the context of chapter 13 plan confirmation and a projected disposable income objection under § 1325(b)(1)(B). The Ninth Circuit disallowed the vehicle ownership expense deduction.[18] The Eight Circuit allowed the vehicle ownership expense deduction.[19]

In *Washburn*, the Eighth Circuit Court of Appeals focused primarily on the "applicable" and "actual" language distinctions for monthly expenses contained in § 707(b)(2)(A)(ii)(I). In noting that the courts are split in their interpretation of the statute, it stated that "[b]oth interpretations of the statute are reasonable and enjoy textual and policy-based support."[20] The *Washburn* court also minimized the fact that the issue before it arose in the context of a chapter 13 proceeding:

> Our case, however, arises under Chapter Thirteen rather than Chapter Seven, and the same issues of presumptive abusive or non-presumptive abuse are not directly in play. Still, the question before us today is how to properly interpret a provision of Chapter Seven, and we do not believe it is appropriate to give § 707(b)(2)(A)(ii)(I) one meaning when applied in a Chapter Seven proceeding and another when applied in a Chapter Thirteen proceeding without a legislative basis for doing so. Accordingly, even though the argument based on BAPCPA's intent to

---

[17] *Tate v. Bolen (In re Tate)*, 571 F.3d 423 (5th Cir. 2009) (vehicle ownership expense deduction allowed for unencumbered vehicle in context of chapter 7 case determining whether presumption of abuse exists under means test); *Ross-Tousey v. Neary (In re Ross-Tousey),* 549 F.3d 1148 (7th Cir. 2008) (on appeal of chapter 7 case dismissed for presumed abuse, above-median income debtor could claim vehicle ownership expense deduction for vehicle on which there was no monthly vehicle loan payment in calculating disposable income).

[18] *Ransom v. MBNA America Bank, N.A. (In re Ransom),* ___ F. 3d ___, No. 08-15066, 2009 WL 2477609 (9th Cir. Aug. 14, 2009), *affirming* 380 B.R. 799 (9th Cir. BAP 2007).

[19] *eCast Settlement Corp. v. Washburn (In re Washburn)*, ___ F.3d ___, No. 08-2023, 2009 WL 2634333 (8th Cir. Aug. 28, 2009),

[20] 2009 WL 2634333 at *2.

-6-

make more funds available to creditors is more compelling in the present case than in Chapter Seven cases such as *Ross-Tousey* [Seventh Circuit] or *Tate* [Fifth Circuit], we find the Seventh and Fifth Circuits' balancing of competing legislative intentions convincing.[21]

The *Washburn* court further discounted the impact its decision in *Frederickson* had on its analysis.[22] *Frederickson*,[23] like the Tenth Circuit's *Lanning* decision,[24] adopted the forward-looking approach to determine projected disposable income in a chapter 13 case. Both permit the bankruptcy court to depart from the disposable income calculation derived from Form 22C when determining the amount of debtor's projected disposable income that must be paid to unsecured creditors under § 1325(b)(1)(B). The *Washburn* court found that any arguments based upon *Frederickson* were not presented in the first instance to the bankruptcy court and declined to consider such arguments on appeal. It also noted that nothing in its opinion prevented the bankruptcy court from departing from Form 22C to project disposable income. This Court reads *Washburn* and *Frederickson* together to mean that while a debtor may take the full deduction for an unencumbered vehicle, the bankruptcy court may still employ the forward looking approach to projecting the debtor's disposable income and consider that the debtor will have no car payment. Essentially, the Eight Circuit has moved the starting line, but the finish line may remain the same.

This Court respectfully disagrees with *Washburn*. Chapter 13 expressly incorporates §

---

[21] *Id.* at *6.

[22] *Id.* at *6-*7.

[23] 545 F.3d 652 (8th Cir. 2008), *cert. denied,* 129 S. Ct. 1630 (2009).

[24] 545 F.3d 1269 (10th Cir. 2008).

-7-

707(b)(2)(A) into its provisions.[25] This Court simply cannot see how one can divorce the interpretation of § 707(b)(2)(A) from § 1325(b)(1)(B), particularly where objection to confirmation is premised on projected disposable income under § 1325(b)(1)(B). In this Court's view, BAPCPA's legislative intent to require chapter 13 debtors to repay their creditors what they are able carries greater weight and is more compelling when interpreting § 707(b)(2)(A)(ii)(I) in the chapter 13 setting. This is particularly so where the competing interpretations of § 707(b)(2)(A)(ii)(I) are admittedly "reasonable and enjoy textual and policy-based support," and projected disposable income is being determined "as of the effective date of the plan."[26] This Court believes that *Ransom* is the better view and that the Ninth Circuit got it right when it stated that its –

> interpretation of § 707(b)(2)(A)(ii)(I) has a substantive effect that is consistent with the underlying goals of BAPCPA. [citation omitted] To interpret the statute otherwise is counterintuitive to one of the main objectives of BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible. When viewed within the larger context of BAPCPA, we believe the statute can only be interpreted to "apply" expense standards in cases where debtors in fact pay such expenses.[27]

The most that this Court can conclude from its review of the array of cases, is that the courts "agree to disagree." The proponents and opponents of the vehicle ownership expense deduction in the circumstance where the debtor owns the vehicle free and clear of liens or encumbrances have fully vetted the reasoning and interpretations of § 707(b)(2)(A)(ii)(I) and there is little which this

---

[25] Section 1325(b)(2) states that for purposes of this subsection [applying "projected disposable income" to payment of unsecured creditors under the plan], "disposable income" is current monthly income less amounts reasonably necessary to be expended. Section 1325(b)(3) incorporates the IRS standards into the expense side of the disposable income calculation where debtors are above median income.

[26] The Court observes that debtors have the ability to seek post-confirmation amendment of their plan if their disposable income subsequently changes. *See* § 1329.

[27] 2009 WL 2477609 at *5.

-8-

Case 08-13232    Doc# 32    Filed 09/01/09    Page 8 of 14

Court can add to those discussions beyond its analysis in *Howell* and its agreement with *Ransom*. The Court will therefore consider the debtors' argument that it should adopt the Tenth Circuit BAP's decision in *Pearson I*.[28]

*Pearson* was a converted chapter 13 case and the debtors were above-median income debtors. Initially, they claimed an ownership expense deduction for two vehicles, one which was fully paid for.[29] The bankruptcy court disallowed the deduction for the fully paid vehicle and ordered that an amended plan comply with this ruling. The debtors amended Form 22C, claiming an ownership expense deduction for one vehicle and an additional $200 operating expense deduction allowed for an older vehicle. The bankruptcy court confirmed debtors' third amended plan. Debtors appealed the order denying confirmation of the first plan and the bankruptcy court's ruling disallowing the vehicle ownership expense deduction for the fully paid vehicle. Before reaching the merits of the issue, the BAP determined that it had jurisdiction to review the earlier interlocutory order denying confirmation even though debtor subsequently obtained confirmation of a plan.[30] The BAP concluded that debtor had standing to appeal the third amended plan as a "person aggrieved."[31]

On the merits of the appealed issue the BAP sided with debtors' argument that "applicable" expenses under § 707(b)(2)(A)(ii)(I) means those IRS standards that apply regardless of whether

---

[28] 390 B.R. 706 (10th Cir. BAP 2008).

[29] Debtors planned to surrender the vehicle on which they owed money and purchase a new vehicle. The bankruptcy court ruled that debtors could not claim an ownership expense deduction for a vehicle they intended to surrender.

[30] Under Tenth Circuit law, orders denying confirmation without dismissing the proceeding are not final orders for purposes of appeal, but such interlocutory orders merge into the final order. Where the notice of appeal identifies the final order, it is sufficient to support appellate jurisdiction to review earlier interlocutory orders. *Id.* at 710.

[31] *Id.* at 711.

such expenses are actual. The BAP purported to adopt and apply the "Plain Language View" in reaching this conclusion.[32]

The trustee appealed the BAP decision to the Tenth Circuit Court of Appeals. While the appeal was pending, the *appellee* debtors filed a status report, suggesting to the Tenth Circuit that the appeal was moot. It appears that the appeal was moot because the debtors converted their case to one under chapter 7 after the BAP issued its opinion and no longer claimed the vehicle ownership expense deduction at issue.[33] Because the mootness was created by appellee and beyond the appellant trustee's control, further appellate review was precluded. The United States Trustee, amicus curiae, therefore sought to have the BAP opinion vacated and prevent the moot judgment "'from spawning any legal consequences.'"[34] The Tenth Circuit Court of Appeals dismissed the appeal as moot and vacated the BAP opinion.[35] It remanded the case back to the BAP with instructions to vacate the bankruptcy court's ruling on the vehicle ownership deduction issue. On remand, the BAP vacated the bankruptcy court's ruling.[36]

---

[32] As Judge Thurman pointed out in his special concurrence questioning the "Plain Language View" label affixed to the BAP's intereepretation of § 707(b)(2)(A)(ii)(I), the controlling statutes are neither "plain" nor "clear." *Id.* at 714-15.

[33] *See* Dkt. 28, Appellee's Status Report and Suggestion of Mootness attached as Ex. 2. At ¶ 10, debtors' counsel represents that "Form 22a now in point claims only one motor vehicle exemption [sic]. It does not depend on the 2nd motor vehicle exemption [sic] which is the sole issue raised in this appeal. The Debtors no longer care whether or not the second exemption is allowed. That point is not now in controversy." Although termed an "exemption," the Court assumes that debtors are referencing the vehicle ownership expense deduction at issue here since Form 22 is not the Official Form for declaring exemptions.

[34] Dkt. 24, United States Trustee Response attached as Exhibit D, p. 1, citing *United States v. Munsingwear, Inc.,* 340 U.S. 36 (1950).

[35] *In re Pearson,* 2009 WL 205408, 309 Fed. Appx. 216 (10th Cir. Jan. 22, 2009).

[36] *In re Pearson,* 399 B.R. 829 (10th Cir. BAP 2009).

Under these procedural facts, a vacated BAP opinion provides no precedential or persuasive value to this Court. It is a nullity.[37] The *Pearson* BAP opinion was mooted by actions of the appellees and prevented appellate review. It was not mooted by any action on the part of the appellant. Just as routine *vacatur* of opinions upon settlement should not be used to "buy precedent," nor should a party's actions be permitted to moot an appeal and create precedent without appellate review.[38] In any event, the propriety of the Tenth Circuit's order vacating *Pearson I* on mootness grounds is not a matter before this Court.[39]

In addition, it is unclear that a Tenth Circuit BAP opinion is binding precedent on this

---

[37] *See Franklin Sav. Ass'n. v. Office of Thrift Supervision,* 35 F.3d 1466, 1469 (10th Cir. 1994) (A judgment that has been vacated is deprived of all conclusive effect); *O'Connor v. Donaldson,* 422 U.S. 563, 577 n. 12 (1975) (Supreme Court's decision vacating the judgment of the Court of Appeals deprives that court's opinion of precedential effect); *United States v. Roberts,* 185 F.3d 1125, 1136 (10th Cir. 1999).

[38] *See Plotner v. A.T.&T. Corp.*, 224 F.3d 1161, 1168-69 (10th Cir. 2000) (recognizing general duty to vacate a lower court judgment when an appellate court dismisses a case as moot; stating purpose of this duty is to prevent a party from being bound by the preclusive effects of a judgment where review was prevented through happenstance); *In re Otasco, Inc.*, 18 F.3d 841, 843 (10th Cir. 1994) ("When causes beyond the appellant's control make a case moot pending appeal, a federal appellate court generally should vacate the judgment below and remand with a direction to dismiss." [citations omitted])

[39] The Court also notes that BAP panels are 3-member panels comprised of bankruptcy judges serving in the districts comprising the Tenth Circuit. If this same issue were to be presented to the Tenth Circuit BAP in the future, there is no assurance that the same 3-member BAP panel would be assigned to the appeal, that the same facts presented in *Pearson* would exist, or that a different panel would reach the same conclusion as the *Pearson* BAP panel.

-11-

Court.[40]  The Tenth Circuit Court of Appeals has not addressed this precise issue.[41]  Thus, even if *Pearson I* had not been vacated by the Tenth Circuit, this Court might not have been bound to follow it,[42] although this Court's practice is to give appropriate deference to published BAP decisions and treat them as persuasive authority, absent a compelling reason to depart.

Here, that compelling reason is the Tenth Circuit's subsequent issuance of its opinion in *In re Lanning*.[43]  Although the Court has reviewed its opinion in *Howell* and remains convinced that the statutory language of §§ 1325(b)(1)(B), (b)(2) and (3) and § 707(b)(2)(A)(ii)(I) is reasonably

---

[40]  *See* Hon. William L. Norton, Jr., 8 NORTON BANKRUPTCY LAW AND PRACTICE 3D § 170:17 (2008) (describing the issue as the "subject of considerable disagreement," and discussing the varied approaches taken by the courts); Philip White Jr, ANNOT., *Precedential Effect of Bankruptcy Court, Bankruptcy Appellate Panel, or District Court Bankruptcy Case Decisions*, §§ 8-10, 8 A.L.R. FED. 2D 155 (2006) (observing that "the precedential effect of BAP decisions is much debated.").

[41]  While the Tenth Circuit has ruled on the binding effect *between appellate court panels*, the Court's research revealed no Tenth Circuit authority regarding the binding effect of a Tenth Circuit BAP panel decision on a bankruptcy court. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993), *cert. denied* 513 U.S. 807 (1994) (The Court of Appeals is bound by precedent of prior panels of Court of Appeals absent en banc reconsideration or a superseding contrary decision by the Supreme Court.); *Haynes v. Williams*, 88 F.3d 898, 900 n. 4 (10th Cir. 1996) (A published decision of one panel of the Court of Appeals constitutes binding circuit precedent.); *In re Vaughan*, 311 B.R. 573, 585 (10th Cir. BAP 2004) (A Tenth Circuit BAP panel is bound by a prior BAP panel decision.); *In re Blagg*, 223 B.R. 795, 804 (10th Cir. BAP 1998) (same).

[42]  *See In re Cormier,* 382 B.R. 377 (Bankr. W.D. Mich. 2008) (BAP decisions are binding on bankruptcy courts in the cases being decided, but are not binding within the circuit, across district lines, or even in bankruptcy courts located in the district from which the appeal arose); *In re Cox,* 393 B.R. 681, 687 (Bankr. W.D. Mo. 2008) (in context of § 1325(b)(1)(B) objection to confirmation, bankruptcy court held that BAP decisions are not binding on the bankruptcy court, but are persuasive); *In re Virden*, 279 B.R. 401 (Bankr. D. Mass. 2002). *Contra In re Tong Seng Vue,* 364 B.R. 767 (Bankr. D. Or. 2007) (BAP opinion is binding upon bankruptcy courts in the districts comprising the circuit, even if the appeal originated in another district).

[43]  545 F.3d 1269 (10th Cir. 2008), *pet. for cert. filed* 77 U.S.L.W. 3449 (Feb. 3, 2009) (No. 08-998).

Case 08-13232   Doc# 32   Filed 09/01/09   Page 12 of 14

susceptible to the interpretation this Court has given it and adequately supports the disallowance of the deduction in the context of chapter 13 plan confirmation, the Court draws further support from *Lanning*. In that case, the trustee objected to confirmation of the above-median income debtor's plan contending debtor was not applying all of debtor's projected disposable income toward payment of unsecured creditors as required by § 1325(b)(1)(B). Although *Lanning* dealt with the income side of the disposable income equation, its holding is significant in considering a projected disposable income objection and calculating projected disposable income. The Court of Appeals described the question before it as follows:

> The issue to be resolved is whether the "projected disposable income" referred to in § 1326(b)(1)(B) is calculated by mechanical application of the definitions of "disposable income" . . . as set forth in § 1325(b)(2) . . . or whether it is permissible to adjust the "monthly disposable income" calculated on Form B22C to account for a debtor's actual ability to fund a plan as of the effective date of the plan.[44]

In concluding that monthly disposable income as shown on Official Form 22C was not controlling, the Tenth Circuit Court of Appeals stated:

> The forward-looking approach permits the amount of projected disposable income to be rebutted upon a showing of special circumstances at the time of plan confirmation. . . .
> For the reasons discussed below, we also adopt the "forward-looking approach."[45]

The *Lanning* court analyzed the language of § 1325(b)(1)(B) and concluded that the forward looking approach best gave effect to the statute's language, as emphasized below:

> Under § 1325(b)(1)(B), a bankruptcy court may not approve a Chapter 13 plan over objection unless **"as of the effective date of the plan"** the plan "provides that all of the debtor's projected disposable income **to be received in the applicable commitment period** beginning on the date that the first payment is due under the

---

[44] *Id.* at 1274-75.

[45] *Id.* at 1270.

-13-

plan **will be applied to make payments** to unsecured creditors under the plan."[46]

In the current case, the effect of allowing debtors to claim a vehicle ownership expense deduction that they do not actually have, is to artificially reduce the amount of debtors' monthly disposable income.[47] Disallowance of the deduction is more consistent with debtors' actual ability to fund a plan and the premise under BAPCPA that debtors ought to pay their unsecured creditors what they are able. For these reasons, the Court holds that in a chapter 13 case in the context of evaluating a projected disposable income objection under § 1325(b)(1)(B), debtors are not permitted to take a vehicle ownership expense deduction on line 28 of Form 22C for a vehicle that they own free and clear of any liens and for which they make no loan payments.[48]

Conclusion

Since *Pearson I* was vacated by the Tenth Circuit Court of Appeals, it has no precedential value, and this Court declines to adopt its reasoning. This Court will continue to adhere to its decision in *Howell* until contrary direction is given by the Tenth Circuit Court of Appeals or Supreme Court. The Trustee's objection to confirmation of debtors' chapter 13 plan under § 1325(b)(1)(B) is SUSTAINED and confirmation of debtors' chapter 13 plan is DENIED. Debtors will be granted ten (10) days to amend their plan consistent with this opinion or their case will be dismissed.

# # #

---

[46] *Id.* at 1279.

[47] In *Pearson I*, Judge Thurman quite correctly characterized this as a "phantom deduction," bearing no resemblance to reality at the time of confirmation. 390 B.R. at 714.

[48] *See also, Ransom v. MBNA America Bank, N.A. (In re Ransom)*, ___ F. 3d ___, 2009 WL 2477609 (9th Cir. Aug. 14, 2009), *affirming* 380 B.R. 799 (9th Cir. BAP 2007).

-14-